We'll hear an argument this morning in Case 1946, United States Patent and Trademark Office v. Booking.com. Ms. Ross? Mr. Chief Justice, and may it please the Court, it is a fundamental principle of trademark law that no party can obtain a trademark for a generic term like wine, cotton, or green. As Judge Friendly explained, and as the Lanham Act confirms, a generic term is never entitled to trademark protection no matter how much money and effort the user has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification. In other words, secondary meaning or acquired distinctiveness is simply irrelevant to generic terms. That principle controls here. It is undisputed that booking is generic for the hotel reservation services respondent provides. Respondent thus could not federally register booking, nor could respondent register booking company or booking ink. In Goodyear, this Court held that the mere addition of an entity designation like company or ink to an unprotectable term does not create a protectable mark. That is because those terms indicate only that parties have formed an association or partnership to deal in the relevant goods. By prohibiting a first adopter from obtaining a trademark in a phrase like booking ink, Goodyear ensured that no party can monopolize a generic term. The same result should apply to booking.com. The addition of .com is the online equivalent of company or ink. It conveys only that respondent provides its services via a commercial website on the Internet. There is no sound reason for respondent to be able to federally register booking.com as a trademark when it couldn't register booking ink. Registration would effectively give respondent a monopoly on the word booking.com and would interfere with competitor's ability to use similar domain names. That's particularly problematic because of how the Internet works. Only one entity can obtain the contractual rights to a domain name at a time. The respondent already enjoys significant competitive advantages that brick and mortar equivalents like booking ink would lack. That same feature of the Internet also means that if respondent's survey evidence is enough to obtain federal trademark registration, then nearly every generic.com business can do the same. Because domain names are one of a kind, a significant portion of the public will always understand a generic.com term to refer to a specific business, even if it is not familiar with the particular business at issue. Counsel, you mentioned the Goodyear case, but you did not quote the language from the trademark statute that is at issue here. That language says that the primary significance of the mark to the public shall be the test for determining whether the mark has become generic. The Goodyear case had a different test, an absolute rule. It seems to me that in trying to decide what Congress had in mind, it makes more sense to follow the language that Congress chose in the statute rather than a 130-year-old case of ours. Mr. Chief Justice, two points on that. The first is that the Lanham Act actually preserves a distinction between generic and descriptive terms. Generic terms, it confirms, and this is both in the definitional provision and then again in section 1052, E&F, confirms that generic terms are never susceptible to trademark registration, even when they acquire secondary meaning. Descriptive terms, merely descriptive terms, may acquire trademark significance when they acquire secondary meaning. I think the Lanham Act preserves the underlying principle of Goodyear. Now moving to section 1064.3 specifically, the cancellation provision that you note, that's on page 11A of our appendix. It says the primary significance of the registered mark to the relevant public rather than purchased for motivation shall be the test for determining whether the registered mark has become the generic name of goods or services. I think it's significant here that that provision was enacted in 1984. Respondent has pointed to no case and no source before its own brief, suggesting that it overturned his court decision in 50 years. It was enacted in 1984, but that's a lot closer to today than the Goodyear case, which was 130 years ago. So I don't know why we would focus more on the statutory language than that old case. But more to the point may be that if this is a generic term, booking.com, that means that it describes a category of goods or services. But when you talk about other companies in that category, whether it's Travelocity, Priceline, or whatever, nobody refers to those as booking.coms. Booking.com is not a generic term to describe that type of service. So again, a few points on that, Mr. Chief Justice. The first is that we agree that in the ordinary case, one might use the term generic to refer or to understand it, how the consumers generally refer to a class of goods. But I think it can also be used, as this court's decision in Goodyear used it, for how a specific entity or how the public would understand a specific term. So, for example, in Goodyear, the court held that Goodyear Inc. could not be, or Wine Inc., for example, could not be trademarked. And that's true, even though nobody refers to a class of wine incorporated. Thank you. Thank you, counsel. Justice Thomas? Yes, Ms. Ross, a couple of questions. Could booking acquire an 800 number? That's a vanity number, 1-800 booking, for example. That is similar to 1-800 plumbing, which is a registered mark. So, Justice Thomas, under the Federal Circuit's decision, yes, it could. Those decisions, I think, may or are sort of debatable under Goodyear and the principles that we think control here. But the Federal Circuit, or the PTO, rather, does follow those decisions because of the right of direct appeal to the Federal Circuit from PTO decisions. Now, I think it's significant that those are distinguishable in the sense that the core problem with Booking.com is that it allows respondents to monopolize booking on the Internet because of the fact that longer domain names of respondents' competitors, like ebooking.com and hotelbooking.com, can include booking.com. That is not as obviously true as something like 1-800 booking. Well, that could be true. But I'd like you to compare this to Goodyear. In Goodyear, you had a generic term, but you also had added a term such as company or ink, which any company could use. Now, with booking, here, there can only be one, domainaddress.com. So this would seem to be more analogous to the 1-800 numbers, which are also individualized. So, Your Honor, you're completely correct that only one Internet entity at a time can hold the domain name rights to booking.com. I think that actually works in our favor rather than respondents' for a few reasons. The first is that respondents doesn't actually argue that every domain name should get a trademark, as I think would be the consequence of Your Honor's position there. I think the reason that respondents doesn't do that, again, is because if that's good for respondents, then it's good for ebooking.com and hotelbooking.com. And then I think the risk of confusion analysis on the back end would also have to account for the fact that each of those is unique. And so a respondent would wind up with a very thin trademark protection. Putting that to one side, in the usual case of trademark, what a registrant wants is the ability both to exclude others from using the same name and to exclude others from using names that are confusingly similar. Because of the functional nature of the Internet, respondents already have that first advantage. So others can't use booking.com online, and their competitors won't want to use those terms in their promotional materials because that will direct customers to respondents' website rather than their own. So the point here, and this is why generic.com terms garner so much money on the Internet. The point, I think, of this case, what really matters is the second type of usage, the ability to block out competitors like ebooking.com and hotelbooking.com. And I think that's exactly the type of anti-competitive concern that this court expressed in Goodyear, that if you allow one company to have a booking inc. or booking company, it's going to preclude others from calling their goods by their name and from marketing themselves as what they are. Now, I think, you know, Judge Wynn explains this very well in the Court of Appeals dissent on pages 28a to 29a of our appendix. What respondent wants here is something it couldn't get in the brick and mortar world. So usually we require businesses to decide whether to adopt a generic name up front, and that allows them to get easy recognition from consumers who automatically understand what they sell. Thank you, counsel. Thank you, counsel. Justice Ginsburg? Two questions. First question is, if you're right, a .com doesn't make a generic term non-generic. How many marks, already registered marks, would be subject to cancellation? I take it there are dozens of .coms that have been registered. Is that so? So, Justice Ginsburg, I think respondents suggest that there are far more than there actually are. If I could make just a few points on this. The first is that the TCAB, which is how the PTO speaks precedentially, has been consistent on this point, and the examiner decisions in our appendix, as well as the Court of Appeals, other than the court below. So, by and large, our rule is being followed out in the world, so I don't think that there is going to be this huge change. Now, respondent does point to some examples, but I think those examples show a few flaws. One of those flaws is that respondent seems to think that, on our rule, the combination of any two nouns, or any noun in an entity designation, is always going to be generic. That's simply not true. You always have to look at how the two terms are being used. So, for example, respondent looks to Cheesecake Factory, but, of course, that's not a literal factory producing cheesecakes. It's a restaurant. So, I don't think Cheesecake Factory. I wanted you to focus on cancellation. Who could apply to cancel an existing registration? If we rule in your favor, would the PTO itself endeavor to cancel these laws? I don't believe so, Your Honor. I think that competitors could, under Section 1064, file petitions to cancel a registration. And, of course, the fact that it was generic would allow cancellation at any point. Now, I think that those same entities could have brought cases previously based on, again, the abiding law of the Federal Circuit and the TTAB, which is and was consistent on this point. So, again, I think because respondents' appendix greatly overstates the number of marks that actually have been incorrectly registered, we don't have a fear that there will be a huge backlash if the rules change. And to explain a little bit more why I think that's so, respondent points to not just examples like Cheesecake Factory. I have another question I wanted to ask you, and it's a follow-up to Justice Thomas. Your answer to the telephone number question, 1-800 booking, was, well, that's the Federal Circuit precedent, but it would be our job in this case to deal with that if the Federal Circuit is wrong. Do you have another distinction, the 1-800, say, mattress or booking, that would distinguish it from the domain name? Yes, Justice Ginsburg. So, I think the other distinction is that, again, booking.com can be encapsulated in longer domain names in a way that 1-800 booking or booking itself really couldn't be in longer phone numbers. So, there's sort of a de facto reason why the same competitive risks aren't there. I think it's also worth taking a step back. Thank you, counsel. Justice Breyer? Same question. Justice Thomas's question. Good morning, anyway. Justice Thomas's question, Justice Ginsburg, what do you want to say about that? You can have a trademark that is an address, 1418 35th Street or something. You can have a trademark that's an address. You can have a trademark that's a telephone number. So, why can't you have a trademark that's a .com? So, again, Justice Breyer, and good morning, I think that it is clear from Goodyear that Goodyear balances these competing objectives that are always true in trademark law in this very similar context of booking company. We think booking company and booking.com are essentially equivalent. All booking.com tells you is that there is a website on the Internet for booking. It tells you it's a type of service that's sort of a classic generic usage. We think that that follows from Goodyear. Now, Goodyear, as I was saying, sort of balances these two competing interests. On the one hand, we want to make sure that consumers understand that the good they got last time is from a particular brand, and so we want strong brand identification, and we protect trademarks for that reason. On the other hand, we want to avoid monopolization of language, and I think that's exactly the concern that Goodyear had with booking. Or, excuse me, with booking company and booking ink or wine company and grain company and grain ink in the words of Goodyear. And it's exactly the same concern that we have on the Internet here because, again, by using booking.com and by getting a trademark on booking.com, respondent necessarily must want to be able to block out ebooking.com and hotelbooking.com and similar names. I think, again, because respondents couldn't do that in the brick-and-mortar world, there's no reason why it should be allowed to do it on the Internet. Now, you noted that you could have sort of a street address as a trademark, but I think that's fundamentally different because, of course, that's not telling you anything at all about the services. So the registrant there would still have to work to build up its brand recognition in the same way that a person who uses an inherently distinctive mark like Amazon has to do. They don't get this sort of upfront benefit from using a generic term where everyone now knows that they provide, in respondent's case, online booking services. And all of the concomitant benefits on the Internet that go with that, such as, again, the fact that other competitors can't use that name and the consumers will go to booking.com expecting that to be a site for online booking, even if there's no particular knowledge on the part of the consumer about that website. Thank you. Justice Alito? What do you think I should do if I think that Goodyear is the case from a different era and doesn't control here, but also think that the Lanham Act similarly was enacted in a different era, namely in the pre-Internet era, and that the case law in which Ms. Blatt relies belongs to that era? How can a rule that makes sense in the Internet age be reconciled with the language of the Lanham Act? So I think, Justice Alito, it's pretty easily reconcilable with the Lanham Act. And I want to go back to the Chief Justice's first question about the primary significance test. Again, the primary significance test is sort of tabbed necessarily in the statute, at least, to cancellation of a mark that was already considered distinctive. So this comes up in cases like Teflon and Kodak and things where it's a coined term. And so as respondents can see, it's a very narrow rule. In 1984, Congress passed this amendment to overturn a specific Ninth Circuit case that had applied a different test in the cancellation context. Now, it is true that other courts have applied similar analyses in other places, but that's because of the pre-existing common law. So for that reason, we think Goodyear continues to control for the same reason that this other pre-existing common law does. But even taking you sort of outside of Goodyear, as I take your question, to suggest, even without Goodyear, you have this very basic trademark policy that has always been true, which is that generic terms simply are not susceptible to appropriation by a particular business, even when there's secondary meaning. This court recognized that in two cases following the Lanham Act, citing Judge Friendly's quintessential sort of categories of terms. And I think it remains true on the Internet, just as it remains true in the brick-and-mortar world. Again, I think trademark is always trying to make this balance between competition and brand recognition on the one hand and fear of monopolization on the other. And I think the fear of monopolization side here really speaks very strongly to our position, because again, a respondent's view would allow them to monopolize any term. I think it's worth noting on pages 6 and 8 of respondent's brief, their test actually requires them, I think, to hedge as to whether the words oranges or oranges, Inc., or I presume oranges.com would be generic. So on their view, oranges remains generic if and only if a survey shows that the public continues to think of that as, quote, the spherical fruit of the same color. I think that would be a surprising outcome under trademark law, whether in the brick-and-mortar world or on the Internet. Now, the other point that respondent makes with respect to the codification of the primary significance test, you know, I don't think it's actually the primary significance test that's the core of respondent's argument. Respondent's argument is much more that that test must always and in all circumstances require looking to survey evidence and giving that survey evidence this positive weight. I think that's not true under Goodyear, which I think is wholly reconcilable with the primary significance test, because Goodyear itself on page 602 of the opinion rejected evidence as legally irrelevant that one particular defendant had sort of the best claim to public association. Again, that's consistent with the Lanham Act inspection. Justice Sotomayor? Justice Sotomayor? I'm sorry, Chief. Ms. Ross, picking up on where you were right now, is it your position that the primary significance test to the public is never to be used in determining what's generic and what's not? And if we don't use that test at least in whole or in part, however much you want, what other things would a PTO examiner look to? Justice Sotomayor, it's not our position that the courts and the PTO can never look to the primary significance test outside of cancellation. Again, I think that the reason why courts and the PTO do that is because the Lanham Act didn't overturn preexisting common law, and that, again, speaks to why we think Goodyear remains good law. But I think what courts should do in this instance is look to other sources to figure out what, again, whether something is a generic term, which usually means whether it is going to indicate the type of good or service. So dictionary definitions are very helpful in this regard. The use by other competitors, like, again, hotelbooking.com and ebooking.com here, and similar sources. What I think what courts and the PTO shouldn't do is give dispositive weight to survey evidence that, as the trademark scholars briefed by Professor Tushnet explained, is going to cause some issues in these particular circumstances. So, again, because of the functional nature of the Internet, because everyone understands that only one entity at a time can hold the domain name ebooking.com, surveys are going to misrepresent the number of people who actually understand that booking.com is a business, as opposed to only infer that because of the way the Internet works. Ms. Rossman, let me stop you there for a moment. I looked at your definitions of booking, and basically one definition said booking a hotel. But this service is much broader than that. You can book a hotel. You can book leisure. You can book travel. You can book cars. So that may be a problem with my looking at booking as generic. But my point being that if I look at all the evidence you point to, ebooking, car booking, hotel booking, that a finder of fact could well conclude that booking.com is, in fact, related to one entity and not to a specific entity, has become more a descriptive word than a generic phrase. Ms. Sotomayor, I think that's both not presented here, and I disagree on the merits. So I think it's not presented here in that respondent has acknowledged, is no longer contesting that booking is generic for the relevant class of services here, and that's the online hotel reservation services. To go to your broader point, you know, I think this actually speaks to the problem with a lot of respondent examples, which is to say you're always looking at the particular category and the particular for which the goods or services are being registered and the usage. Now, on this idea that, well, maybe it's... Thank you, counsel. Justice Kagan? Good morning, Ms. Ross. One short question first. I'm right in saying that you're advocating for a categorical rule here, am I not? In other words, you're not saying that trademarks of this kind will rarely be registrable. You're saying that they will never be registrable. Is that correct? I think it depends a little bit, Justice Kagan, on what you mean by trademarks of this kind. We think that when you're simply appending .com... Bookings.com, booking.com. Sure. So, booking.com and other phrases where that combination doesn't add any additional meaning. So, I mean to distinguish cases like the courts of appeals have hypothesized, like tennis.net, where there's sort of an interplay between the two words on either side of the period. We don't think that those could necessarily never provide for trademark protection. We just don't think that's really presented here. Is that why the PTO takes a much less categorical position? It says, well, those .coms will typically not add source identifying significance, but it doesn't say never. Why is that? Why is there a difference between what the PTO examiner's manual says and what you say? I don't think there actually is a difference, Justice Kagan. I think what the PTO is leaving open, again, is this category, this very narrow category of rare cases that the Federal Circuit and the Ninth Circuit have recognized. I think what Respondent would do is to expand that category. I mean, Respondent has tried to say that this is sort of the rare case, but as I was explaining earlier, I think basically every generic .com case is going to have this type of evidence because of people's knowledge of how the Internet works. In your brief, you say, you know, you're not making the argument that people go around talking about booking.coms, but you're instead saying that booking.com is generic, and this is on page 44 of your brief, because customers would understand the term to convey only that the company provides online booking services, and the term conveys no additional meaning that would distinguish Respondent services from those of other providers. And I guess when I think about that test, I think, well, maybe or maybe not. If the test is what you say, what is a consumer going to understand, and does the term convey additional meaning that would distinguish the Respondent services from others? I kind of think, well, maybe it would. Well, so how does that test go along with the categorical rule? So I think, Justice Kagan, to the extent that you think it could convey to consumers some additional meaning, that additional meaning, and really the only additional meaning that Respondent has ever pointed to is this idea that it points you to a particular website. So that, I think, both because it's a functional feature of the Internet to which we don't usually give trademark protection, and for all of the competition-based reasons I was noting earlier, I think that can't be enough to get them over the line. They've never made an argument. Again, sort of the key distinction between generic and descriptive terms is that a generic term identifies the type of good or service, whereas a descriptive term tells you something about a feature or a characteristic of the service. So, for example, apple pie, generic for pies, but descriptive for rooms. Sorry to interrupt. Suppose, Ms. Ross, that you lose on your argument on a categorical rule. Is there something else that you would like the court to include in an opinion about how to evaluate registration claims for generic dot-com marks? In other words, if categorical is a bridge too far, is there something else that we should be thinking about in terms of saying when it is that generic marks are registrable? So, a few points, Your Honor. I think, first, we obviously think that the court should follow Goodyear, and so I think what Goodyear said was that generic company terms, quote, without further specification, won't be enough to get trademark protection. I think that that is essentially the rule that we're asking for here. Briefly, Ms. Ross? Sure. I think we would want the, at a bare minimum, the risk of confusion analysis on the back end to be extremely sensitive to the fact that what's driving the intuition is the uniqueness of the domain name, and so that equally applies to respondents' competitors. Thank you, counsel. Justice Gorsuch? Counsel, I'd like to follow up on that and just give you another minute to continue answering that question. Suppose the court does not accept your bright-line rule. How would you advise the court to write an opinion that draws on and points to the sensitivity necessary in this area? Sure. So, a couple of points, Justice Gorsuch. The first is that I think, again, even if the court did not think that Goodyear is thoroughly controlled here, as we do, I think it is very indicative of the right type of analysis in terms of the concern with monopolizing language. As I was saying earlier, I think… Let's put Goodyear aside for the moment, okay? Again, I know you want us to go there, but put that aside for the moment. What would you have the court say? Certainly. So, I would want the court to recognize, as the Lanham Act, I think, commands, again, in Sections 1052E and F, that generic terms generally are not susceptible to trademark registration based on secondary meaning. And so, respondents, like all generic.coms, would have to come forward with some evidence other than simply this secondary idea that, yes, this is a term that just tells me that it's an online booking agency, but consumers have come to understand it as something else. I think blurring that distinction can have really bad consequences outside of the .com context. So, again, the Oranges or Oranges Incorporated example, where everything is now subject to survey evidence. So, I would want the court to make clear. I guess that leads to my next question, and that is, why are existing doctrinal tools under the Lanham Act sufficient? Because we do always, in every case, not just this area, would take very seriously questions about consumer confusion. And it seems to me a lot of your argument on competition law policy issues is concerned with consumer confusion. But the Lanham Act accounts for that. And then it seems like you're also concerned about the use of a generic term. But fair use doctrine is designed to account for that. So, why aren't there sufficient doctrinal tools to address the competition law concerns you've raised? And why isn't this just another example of where intellectual property and monopolization concerns intersect? And we have to respect the judgment Congress made in this particular area. So, Justice Gorsuch, there's a lot in that question. I think that, you know, my first line answer, of course, is that we think that the tools are sufficient. They just point in our direction. Now, I think that the fact that generic terms can't be trademarked, even upon a showing of secondary meaning under the Lanham Act, is itself enough to resolve this case. Now, moving on from there, you mentioned the risk of confusion analysis. I think it's notable that Respondent, in their brief, says we should get a trademark on Booking.com, but if eBooking.com comes, and a large part of that is because we're unique, but if eBooking.com comes along, we should win in a risk of confusion analysis because we were here first. Now, I think if it's sort of good for the goose, good for the gander, if Booking.com gets trademark protection because it's unique, then it seems as though eBooking.com should get equal protection because it, too, is unique. So I don't think that sort of the competition concerns are necessarily resolved under existing trademark law. I think you would actually have— Justice Kavanaugh? Thank you, Mr. Chief Justice. Good morning, Ms. Ross. Respondent says there's no threat of monopoly with domain names because they're unique, and they say they wouldn't, in fact, be concerned about eBooking.com or similar names in their brief. So what are the real-world practical problems you foresee if .coms could obtain trademarks? Thank you, Justice Kavanaugh. So, again, I think the real-world practical problem is, one, I don't read Respondent actually to say that they wouldn't think that eBooking.com were infringing. They say, sure, go ahead and register it, but if it turns out consumers are confused and we think we get the territory and you don't. So I do think there is a very real risk of monopolization in that sense. The other risk, though, I think is that Respondent is already getting, as I mentioned earlier, these huge first-mover advantages from the fact that it and only it can control Booking.com on the Internet. And so it is asking for this privilege that no business would have in the real world of both getting the really exacerbated first-mover advantages of using a generic name and then also getting the back-end trademark protection. And I guess I don't see why the Internet context should permit that, again, given that it already gives Respondent these huge advantages. I also think this is sort of maybe a lesser level, but if it's true that Booking.com and presumably every other domain name can get a trademark, then you're going to have this problem where the trademark system is basically becoming a domain name registry system. It's just duplicative of that. And I'm not sure why, rather than following sort of bedrock trademark principles like generic terms can't get trademark protection, no Booking company, therefore no Booking.com, the court would go in that direction of essentially just having a quasi-DNR for Internet generic.com names. Respondent also points out that there have been registrations of Booking.com in other countries, the EU, the United Kingdom. Can you respond to that? Sure, Justice Kavanaugh. I think that may well be true. I don't think it's particularly relevant here. Obviously, those other countries aren't focusing or aren't constrained by Goodyear, as we think this court is, and they're not constrained by the Lanham Act, as we think this court is. And obviously, again, I think the Lanham Act preserves that core understanding of Goodyear, which is no company can obtain a trademark on a generic term, even if it shows that the public has come to associate it with its goods. That's all Respondent has argued for here. Thank you. Ms. Ross, why don't you take a minute to wrap up? Sure. Thank you, Mr. Chief Justice. So I think our basic points are simple. We think our rule flows directly from Goodyear.com is simply the online version of company, and it tells you only that Respondent operates a commercial website via the Internet where bookings can be made. We think it's consistent with the Lanham Act's preservation of this distinction between generic and descriptive terms and with longstanding trademark policy. The Respondent's rule, by contrast, would require overturning Goodyear, blurring the Lanham Act's line between generic and descriptive marks, and permitting the monopolization of generic terms online. And for all of those reasons, we would respectfully ask that the court reverse. Thank you, counsel. Ms. Black? Thank you, Mr. Chief Justice, and may it please the court. This case is about how to tell the difference between descriptive names the Lanham Act protects and generic ones the Act does not. There are three reasons this court should hold that the answer is the primary significance test, that is, whether consumers primarily think the name is a genus or a potential brand. First, the Act mandates this test. Second, the Act abrogated Goodyear. And third, this test furthers the statutory purpose to let consumers decide which marks deserve trademark protection. First, the text. The Act has always required, in sections 1052, 1091, and 1127, trademark registration if a mark helps consumers distinguish among brands. In other words, the Act protects descriptive names, which consumers find useful, but it excludes generic ones, which consumers think just refer to a genus. The Lanham Act thus codified the law of unfair competition, which had protected descriptive but not generic names. And right before Congress passed the Act, this court in Kellogg adopted the primary significance test under unfair competition law to distinguish between generic and descriptive names. For the past 70 years, courts have embraced this primary significance test to tell the difference under the Lanham Act. And it was against this universal backdrop that Congress later codified the primary significance test in sections 1064 to overrule a decision departing from this test in the cancellation context. 1064 thus reflects Congress's ratification of the primary significance test to define a generic name in all context. The government has no other test for the dividing line other than primary significance. Second, Goodyear did not survive the Lanham Act. The Act repudiates, root to branch, any per se rule that an island of words are generic as a matter of law. Regardless of consumers' views. First, sections 1052, 1091, and 1127 necessarily define generic names as ones that do not help consumers distinguish among brands. Because everything else must be registered. And the factual question about what consumers think is the antithesis of a per se rule. Thank you, Counsel. You rely heavily on the primary significance test. But that is only in the provision of the statute dealing with cancellation of marks. And, of course, this is not a cancellation case. It's a registration case. So why should we assume that the primary significance test carries the weight that you would give it? Sure. So, like I just said, the 1064, we think, is a ratification of the law as if you were looking at the dividing line between what's a generic term and what's a descriptive term. And the specific amendment was to overrule a decision that had come up in the cancellation context. So it was targeted to that Ninth Circuit anti-monopoly case. In terms of the primary significance test, though, if you ignore section 1064, there is still no other test than one that looks to what consumers think of the mark. Because three provisions, regardless of 1064, require registration of marks that help consumers distinguish among brands. Well, maybe one reason that Congress put this in the cancellation section and not in the registration section is because they appreciated the significance of Goodyear with respect to registration of marks. I don't think that can be right. Because, again, Goodyear is a common law rule. Let's just talk about Goodyear. Goodyear is a common law rule that is based on the principle, under common law, that no mark could be trademarked if competitors could, with equal truth, hypothetically say that about the mark. And so Goodyear, by its terms, interchangeably uses the word generic and descriptive marks. And that was true because common law didn't care. Both were off limits. And so the court in Goodyear specifically said wine company is no different than Lackawanna coal and Pennsylvania wheat, which are descriptive terms. And the court said both are off limits. This court in five, five cases at the time, right after Goodyear, described Goodyear as not only a case about descriptive terms, but two cases, Lord's Manufacturing and P.D. Beckwith, which are cited on page 28 of the government's brief for the equal truth principle. And that's where the government, I think it didn't mean to, but it basically says booking does not deserve a trademark because everyone with equal truth could be a booking company. There are a lot of companies that use booking in their second level domain, ebooking.com, hotelbooking.com, eurobookings.com, travelbooking.com. If you succeed in trademarking booking.com, then these competitors will be impeded from using that term, which is an accurate description of the services and goods that they provide. Is that something that we should take into consideration? Sure. And Mike, you should take into consideration with all marks that are descriptive. I mean, our bottom line position is that dot-com marks should be treated the same. But there are three reasons why you shouldn't worry about what the government's, their sort of, you know, concerns about anti-monopolization. First, the concerns are just in a brief. They don't give you a single, not a single example of harm, despite the ubiquity of generic word dot-com marks and the fact that booking.com is registered in 85 other countries, including one. Could you quickly note what your second and third reasons are? Yeah. So let me get to the third reason, which I think is the legal reason in terms of why it doesn't crowd out. The more descriptive a mark is, the harder it is for that mark to show a likelihood of confusion, a requisite element in any infringement claim. Thank you, counsel. Justice Thomas? Sorry. Thank you, Chief. Just getting back to the chief's question, Ms. Blatt, you seem to rely almost exclusively on the primary significance test. Do you need that test in order to prevail here? No, because regardless of what you think of our test, the government can't be right, because three statutory provisions that don't mention primary significance test overrule, repudiate, abrogate, and completely eradicate any notion that you could have a per se rule that would ignore what consumers think, which is why the court in Qualitex didn't need some primary significance test. It just said you don't have the common law per se bar against trademarking colors. It's just a factual question about what consumers think. Do they find the mark useful? And so we went under three provisions. I think the other problem, even putting aside those three provisions, Justice Thomas, is that there's a whole separate problem the government has, that there are two provisions that require courts to look to how consumers would view the mark as a whole and not its component parts. And so you can't just think because wine is generic, company is generic, wine company is generic, and that's the same, you know, with the word container and the word store. You put the two together, booking or dot com, you put the two together, and you have to look at the way consumers would view that as a whole. That also abrogates a per se rule. So you don't even need to mention primary significance to know that the government is wrong. It just so happens that every court has always said the primary significance test governs. The PTO's manual says it. It's the test that was applied in this case. And if I could turn to something that I think is pretty devastating for the government, it's their appendix. Their appendix of rejected marks is not based on Goodyear. It's based on the primary significance test. Go look at the records in ad.com, bedandbreakfast.com, bookkeeping.com, limiting.com, newspaperarchive.com. There's no Goodyear. It's the primary significance that looks at extensive evidentiary record about how consumers would perceive the mark. Now, our appendix is the same. It's not based on mistakes. Weather.com, tickets.com, dating.com, wrestlingfigures.com, and another bedandbreakfast mark. The PTO looked at extensive evidence. It wasn't some lazy PTO officer. It was someone looking at the primary significance test and saw, wow, I'm seeing that consumers really see weather.com as distinctive. It deserves registration. So the status quo is the primary significance test, and that's what has been, you know, I think it also should give the chief and Justice Thomas some comfort that most marks plus the primary significance test, but some don't. So you make a, the government relies on Goodyear, and you say that, of course, there's been a sea change in trademark law since Goodyear, particularly with the Lanham Act. Would you just explain briefly how you think the Lanham Act has expanded the trademark law and what is protected and what is not protected? Sure, Justice Thomas. So it's a basic overhaul in the sense that, again, these are these five Supreme Court cases that are cited on pages 37 and 38 of our brief, and all the old chestnuts, Elgin and Canal Company, these are famous trademark cases that are all about the bar on descriptive marks. You cannot, could not, may not trademark Rock-A-Wanna-Coal or Pennsylvania Wheat or Elgin Watch or whatever the typewriter was in the Howe case. You just can't do it because everybody has an equal right to say they have that particular characteristic or that particular. Thank you, Ms. Blatt. Justice Ginsburg? If you have the same name, Ms. Blatt, then the consumers will know that the word com.com will get you a particular source, not all sellers of a given commodity, but one particular source. And yet you don't argue that generic.com is always potentially trademarkable. So when will generic.com remain genetic? So in terms of when it flunks the primary significance test, in addition I can talk, I'll give you some examples, but the sites that I gave you from the government appendix are good examples of how generic word.com marks flunk it. But let's just, let's look at, well, there's several examples. So in our survey, majority, an overwhelming majority found that washingmachines.com were generic, and yet an overwhelming majority found that booking.com referred to the travel website that's used around the globe. Another example, just sort of a common sense example I can give you, is that sometimes people think of generic word.coms generically. I have searched every grocery store.com looking for toilet paper. I have now started looking at every hardware.com. I am using fooddelivery.com for all of my takeouts these days. Those are generic usages of a generic word.com. And I think the examples on the PTO's database versus our examples just show you where, and let me just correct for the record here about survey evidence. Survey evidence is never dispositive. You always look at any and all relevant evidence about consumer usages. And if there's evidence from newspapers, consumer surveys, dictionaries, trade journals, that give you reason to suspect a survey is either unreliable or just you don't have to credit it, then don't credit it. Then the generic.com mark loses as a factual matter because the evidence is otherwise overwhelming that the mark flunks the primary significance test. It's just that here the government dropped, it tried to argue the survey was unreliable, but it weighed that in the Court of Appeals. And so we, and the district court said I'm not just relying on the survey, I'm relying on all the evidence about booking.com and the lack of PTO's evidence. But other cases will turn out differently. May I ask you another question? And that is, if passing off another's services as your service is what you're really concerned about, why doesn't unfair competition law afford you adequate protection? So mainly the reason is because, you know, we're a business. We want the same competitive rights that every other travel agency has to federal registration. But specifically, .com marks need sections 1125D and D2 in particular because it allows in rem proceedings. So if you have a cyber scam, they largely arise overseas and the person is beyond the jurisdiction of the U.S. courts. And what the Lanham Act does, if you're a trademark, it allows you to sue the domain name and basically shut it down. And spoofing, typosquatting, and all these other cyber scams are prevalent on the Internet. But I do think even if you didn't have the Internet-specific reasons, they're not second-class citizens. They deserve the same trademark registration rights as any other company to protect against outright counterfeiting and infringement. Thank you, counsel. Justice Breyer? Thank you. I'd like to draw your attention to Professor Kerslake's belief on the trademark, which is against your possession. It's a combination of four things. One, the trademark law is supposed to give the company the advantage that grows out of a commercial identification. It's not supposed to create monopoly power or market power beyond that. Here, the power of the trademark, your trademark, is exactly growing out of the fact that everybody knows there's one com with one name. And if you can do it in the future, you don't have to worry about searching the Internet for toilet paper from grocerystores.com. There will only be one. Grocerystores.com will recognize one and only one. There'll be pizza.com, there'll be cookies.com, there'll be flowers.com, et cetera. Now, second, the problem is maybe not so bad if that was the only thing that they could use. But there are going to be lawsuits when it's ipizza.com, because that's Italian pizza, or fflowers.com, because that's fresh flowers, or ebookings.com. So we're creating an area of exclusivity that goes well beyond the name. The third thing they bring out is that, in fact, the identification that you talk about flows simply from the fact that loads of people now know that each Internet company has one name. So the interesting thing about your survey is not the 73% of the people who think that bookings.com is a single company, but the 33% of the people who think that washingmachines.com is a trademark special company, which it isn't. And they do that because they know about the Internet. So you're taking Internet power, not just advertising or commercial product power, and multiplying it. And the fourth thing is what Justice Ginsburg said. There's another way to achieve your result, unfair competition law. All right, now that's a lot, but I want to hear your answer to those points. Sure, it's not really a lot. First, there's the statute, that the statute decided the policy decision in our favor. If we meet the definition of a trademark, we get registered. Second, as a policy matter, the Tushnet brief is just wrong. If you look at pages 94 of the trial court record, that was the government's expert's story, their narrative. The judge rejected it. And if you look at pages 164 and 167 of the joint appendix, our expert trashes that methodology and makes fun of it. Okay, take out. Go ahead, remove every single person who erroneously thought washingmachines.com was a trademark. And you still get a 64%, which is huge brand recognition for booking.com. Third, the government's appendix just destroys this argument. They reject these marks day in and day out. They don't get registered. Fourth, reality destroys their argument. Where are the lawsuits? Where are the complaints? Nowhere. I don't see any. Our brief at pages 27 and 28 cites rent.com, tickets.com, and travel.com. And then cites like, and I lost, we just ran out of room to put them all. 123rent.com, rentusainow.com, forent.com. It's endless. The notion that anyone is being crowded out is just silly. It would be one thing if they could explain someone complaining. But the ubiquity of the travel marks and the ticket marks and the rent marks is nuts. Thank you, counsel. Justice Alito? What would your client's position be if companies that took booking.com but made very slight variations thought trademark protection? Yeah, that's fine. And that's why e-booking, we don't object to e-booking. E-booking is not a problem. And I think it's for the two reasons, if I could finish, it is exactly what Justice Gorsuch said. It is the fair use defense allows under Section 1115B4 that anyone can use the registered name. Here it would be booking or booking.com to describe their services, no liability. And McCarthy has a huge thing on this, that the more descriptive the names, these lawsuits just don't work. And that's true with the Statutes.com marks. Alzheimer's has a foundation. Your client would not object to the registration of any trademark that simply made a slight variation in booking.com. That would be fine. All of those companies could register their trademarks. They are, because there's a million booking registrations already. Just answer the question. Would your client object to that? They don't and have not and would not. Now, if there was fraud and somebody ripping off the goodwill based on booking.com, I'm sure they'd want to sue. But it would be very hard to bring that lawsuit. Very hard. My concern with your position is exactly what I think Justice Breyer just suggested. You are seeking a degree of monopoly power that nobody could have had prior to the Internet age. I take it a company could not have registered booking company. But because of the Internet, you have booking.com, which gives you an advantage over other companies that are in that business. And now you want to get even more advantage by getting trademark protection for that. If I could turn to the company situation, this is not true. The wig company, which is registered as celebrating its 50th year anniversary, is called the wig company. There's also the wig shop and the wig store and the wig mart. And so it's not like wig company has crowded out wig companies. There are many places that sell wigs just fine. It's not like any generic word .com has crowded out. Weather.com exists with AccuWeather.com. Law.com, there are so many Law.com variations that are registered and not suing each other and no one's complaining that you just type in Law.com into the database and you'll see it. There's just a lot of registered names. And that's fine in terms of saying, well, that's just what the PTO does. But the fact that they don't have any anti-competitive harm seems to be telling that you wouldn't want to write an opinion destroying the billions of dollars of goodwill that's been built up in not just .com marks but in company marks. And if you extend Goodyear past corporate designation, it's just the government cited it. Well, .com is not an association of a partnership. It's a store to buy stuff. Thank you, counsel. Justice Sotomayor. Ms. Blatt, I am troubled, as Justice Breyer and Justice Alito are, about the monopoly situation. But I'm also troubled by what's the rule that you want the PTO to follow? They can't trademark under law generic names. Are they required now to run their own consumer perception surveys before they determine that a particular name is generic? Are you okay with the existing rule that I think Justice Kagan read before, which is that there is no per se rule, but that how is it going to change PTO practice? And won't it lead inevitably to the registration of every single common name of every business and then an expensive legal fight on whether it's become generic or not? So I 100% agree with Justice Kagan. Our view is the status quo, which is the primary significance test. It's what the PTO's manual says. It's what the PTO has been applying, which is why our appendix and the government's appendix are actually consistent. It shows the PTO day in and day out, rolling up its sleeves, applying the primary significance test. No, you do not have to have a survey. The PTO looks at tons of evidence and says, look, consumers would see this as referring to any place on the Internet that sells these goods. You're not getting registered, and that's the end of the story. And that's why a lot of those marks end up on the rejected list. Now, on our list, when they let in weather.com, they looked at different evidence and said, wow, weather.com has a big consumer fan base and has the primary significance of being a brand. So we've got to register that, and that's good for consumers. You want consumers to know when they go to weather.com, they're getting weather.com and not ecuweather.com. And same way with the dating.com and wrestlingfigures.com. So I hear you on you're worried, but the PTO is up to the task. This is what they've been doing. And we've had their.com marks that have been registered from the late 1990s and 2000s. If this is a factual question and a district court is not to give the PTO deference, then what we're going to have is every district court reweighing all of this evidence that the PTO looked at. And frankly, I'm on the margin with respect to your mark, because I would have looked at e-booking and car booking and hotel booking and all of those other bookings and said this really booking standing alone is generic, even with.com. Now, you point to the Teflon study, but you seem to be saying that a district court who ruled a different way would be wrong as a matter of law. Could that be that survey ever be dispositive? No. So let me be clear. A district court. And it sounds like we would have lost. Had you been the trial court, could we look at it? Maybe, maybe not. I didn't look at that entire. You could. We could have lost at the trial court level. That's the risk you take. A lot of people go the federal circuit route because they like federal circuit law. And you take a risk. You go usually the district court route when you think you have good evidence. Thank you, counsel. Justice Kagan? Good morning, Ms. Lutz. I guess what strikes me is something along the same lines as what has struck Justices Breyer and Alito and Sotomayor. And it's that there seems a disconnect between the primary significance test and these kinds of names. Because the primary significance test is really asking, well, does the consumer understand something as referring to a category of products or instead as referring to a particular product or service? And these names, by definition, are unique. And everybody knows that they're unique. So if you apply the primary significance test to these completely unique URLs, aren't you going to get a bias in the results? And that's true of the survey, the Teflon surveys, but it's true of evidence generally that it would seem as if you're going to get a bias in the results and more things will seem to be registrable than really ought to be. Yeah, so great question, and I think I can clarify this for you. So just like the wig company or wig.com, they can be generic for wig companies and wig producers. So it's not just you have to say the wig company. No one thinks the wig company is referring to wigs. It would be generic for a type of company. So it's not just the category of goods. It's the category of the sellers. So if you think of booking.com, it's no different than the container store. You could say that it's so unfair that container store, the container store, because there can only be one the container store. It's the same way with .com. Now, you're right about the Internet address, but that would indict every .com mark, even your hotel, Paris, Paris hotel booking, because you would always win under this fear of it could never be generic. And so courts have just been dealing with this, I'd say now for two decades, at least the PTO, that we're treating the .com marks like house marks, store marks, association marks. Let me ask you another question that goes back to what Justice Alito said. And you said to him and to the Chief Justice, well, you wouldn't sue ebookings.com or hotelbookings.com or any of the number of variants on the name. Who would you sue? When is a .com going to win a trademark suit? I haven't seen any. The same reason, but let me just be clear, the same reason the Alzheimer's associations and the paper stores and the paper marks aren't all suing each other, because they lose. So these suits don't happen. But why people want trademark registration is twofold. It's outright counterfeiting, because booking.com is a popular name, and we don't want people ripping off or a store opening up. I think if you read the car.com brief, they show car dealers putting up signs calling themselves car.com. That's called ripping off. That's called theft, and that's what the trademark laws are about. So you need that. But secondly, I think that they want it for the 1125D. It's a specific problem with spoofing and cyber scams. And that is definitely what the Internet amicus briefs are saying, is that they need this. And that's what booking cares about. Booking does not like Internet scams and cyber scams, stealing its business, and ruining its reputation because, you know, someone infects your Internet and destroys your identity. Thank you, Counsel. Justice Gorsuch? Good morning. If I understand your point correctly, Ms. Platt, it's that the government's concerns about the competitive advantage are minimized or mitigated by the fact that marks like booking.com are relatively weak because you're putting together two generic terms. And consumers may well have your company in mind when they see that. We've got evidence, and we can argue about how good that is, but there may be no consumer confusion. And that may also be true with e-booking or hotel booking. Consumers may or may not, depending on the facts, have particular companies in mind. And the relative weakness of the mark is your answer, together with the fair use doctrine, to the government's monopoly concerns. Is that a fair summary? Much better than I said. Will you expound on that, please? Sure. So let me just help you with the reason why they're so weak to begin with and why McCarthy has this whole chapter of every lawsuit where similarly worded marks can't sue for others. Let's take weather.com and accuweather.com. So it turns out that consumers, when you have very descriptive marks like both of those that are registered, consumers become very conditioned to focus on the difference. So they know accu is different. If you look at booking and e-booking, consumers would focus on, oh, there's the E site. There's the E one. I want to go to the E one. And so it is very, very hard to show likelihood of confusion because the more similar the mark is, it becomes extremely impossible or exceedingly unlikely to be able to prove that. And that is not specific to the dot-com context. It's the same problem that every mart, shop, source, place, exchange, emporium, collective. You know, like there's a million dog marks, a million coffee marks, a million paper marks. They all have different store, shop, place, very similarly worded. They never sue each other. And if they do, they lose. And I'm not making it up, Justice Gorsuch. They had a whole brief to cite examples of lawsuits. Can you address for me a little bit more on the record? I know we're not the trial judge here, but Justice Breyer's point, I think 74% of consumers recognized booking.com as your client, but 33% think that anything.com is a real store. So only about, as I understand it, about 41% on a net basis recognize your mark. What do we do about that? What should we say in this opinion, if anything, standard, if not the facts? Okay, so you've read the Tushnet brief and the government's brief. You have not obviously read our expert. Okay, so why it is so funny is that you would never net them out. You don't take 74 and subtract 33. It's just based on a very lack of understanding of survey methodologies. You net out the participants. And so when you net out the participants, you say, Lisa Blatt dumbly thought washing machine.com was a brand, so we're going to take her out of the survey. So if you look at the people who correctly saw washing machine.com as generic, 64% still saw booking.com. And so I guess I can say there's just an extensive discussion of this. I understand that. I'm trying to instruct us to level up from the facts. Okay. And ask for guidance as to what the court should say with respect to these kind of survey methodologies, if anything. Briefly, Ms. Blatt. Ms. Blatt. Oh, yeah, I'm sorry. So what I would say is that, you know, the survey instructs the consumers, I mean, sorry, the participants ahead of time that office supplies is a common office supply.com is generic. And if they didn't understand that, they couldn't take the survey.  Justice Kavanaugh. Sure. Thank you, Mr. Chief Justice. Good morning, Ms. Blatt. I want to make sure I understand what you think about our precedent in Goodyear exactly. Could the principle of Goodyear still have some value outside the .com context in the classic company context in which that case arose because the .coms are inherently unique? Or is your position more broadly that Goodyear just has no value anymore? So I'll fall back. Certainly you shouldn't extend it to .com because .com is closer to the word store and shop. But if you took Goodyear at its word, you're killing nonprofits because of the association problem. Goodyear, the terms of the opinion say it means association. And that's how nonprofits identify themselves. So we have our coalition or society. And so you have the amputee coalition, the Christian coalition. There are so many of these associational marks that I think Goodyear would destroy in addition to Foods Co. or Container Store. And I just want to say one thing about the government making fun of the Cheesecake Factory. Crab house is not a literal house where crabs live. They're actually dead and you eat them. And the government thought crab house was generic. So if you go down this road of thinking that certain words are off limits, I just think you're creating a real mess that's very unstable, unprincipled, and unworkable and unclear. Picking up on Justice Kagan's line of questioning, it seems that your rule invariably will lead to a situation where most every .com business that sells goods or services will be able to obtain a trademark. Maybe, in other words, your position leads to the opposite kind of bright line rule. Maybe that's okay, but is that wrong? And if so, when wouldn't it? I think it's wrong, but I hear at least six of you concerned about it, so I can try to help on this. What you can do is make clear in your opinion that a district court, if there is evidence from all kinds of sources that the PTO uses, and all those examples I gave in the beginning, they cite all kinds of examples proving that generic word.com marks flunked the primary significance test, that the PTO can look past survey evidence and so can courts. If you're really worried about a survey bias, now we have a whole brief of survey experts saying this was a great survey. So I hate to trash our survey. A lot of people thought our survey was great. It's just a classic Teflon survey. But also, let me just take you to Waffle House. Waffle House, there was a fight about the survey. The PTO said it was generic, and Waffle House came in with a survey, and they trademarked it. So I don't know why .com is having some sort of, you know, it's scary, and therefore it should be treated differently because of this fear that all .com marks have an unfair advantage because of a website. You know, the PTO has been doing this for two decades now without a problem. Thank you, counsel. Ms. Ross, you have three minutes for rebuttal. Ms. Ross, three minutes for rebuttal. Thank you, Mr. Chief Justice. Sorry about that. If I could just focus on three main points. First, I think Respondent's Rule operates from the presumption that the Lanham Act knocked out all prior common law unless it was expressly preserved. That's the opposite of the way that we usually think about statutory change. I think just a couple of weeks ago in Romag, this Court of Nine Justices looked to the common law to determine what the Lanham Act preserved, and I think the same should be true here. That's particularly so because in the examples that Respondent cites, like geographic terms and descriptive terms, Congress was clear when it wanted to overturn pre-Lanham Act precedent. I think on the second point, Respondent suggests that the primary significance test did it. In particular, I think I heard my friend suggest for the first time today that Kellogg itself did it. That's inconsistent with the position that they take on page 22 of their brief, which acknowledges that Kellogg actually discussed the primary significance test to determine when a descriptive term would get protection under unfair competition law. So that's entirely consistent with the view here that generic terms are never susceptible to trademarks, even when a showing of secondary meaning has been made. Again, we think that the primary significance test coexists with prior law, which includes Goodyear. And I think Respondent points to this idea that the PTO has been applying the primary significance test. That's true with the Goodyear sort of guardrail. It understands that a generic term can't be made into a trademark simply by showing that a bunch of consumers think that it's associated with a particular mark or particular brand. Now respondents' examples, actually, our respondent survey actually proves this point. There was a lot of back and forth about washing machine.com versus booking.com, but I think what's really instructive here is washing machine.com versus supermarket. 33% of respondents in respondent survey thought that washing machine.com was a brand name. Zero, not a single survey respondent thought that supermarket had that characteristic. So clearly the dot-com context is doing a ton of work on respondents' view. The third point that respondent really hit was this idea that there wouldn't be any competitive harm from a respondent's rule. I think that's clearly not correct. We know that because of the same reason that we know that booking companies shouldn't be allowed to be trademarked. We just know that when you have, that the trademark law is not supposed to take terms off the table that everyone needs to describe their goods. I think, you know, respondents focus on certain examples like tickets.com and container store. I think, again, respondent is misunderstanding that you have to always look at how, what those are registered for. So tickets.com, for example, for ticket management services, not for tickets generally. So they're massively overstating what's going on here. I think, again, there might be hard questions of the margins on some of these, whether it's something like container or tickets is being used in its generic sense, but that's not reflective of the dot-com or the company that's at that first root level. Finally, I think if they're not going to see ebooking.com and hotel, booking.com, it's really unclear what they want out of this. I'm ripping off. Respondent referred to is covered by unfair competition. Type of squatting. Likewise is covered by unfair competition and section 1125 D, which responded pointed to, I'm presumed that you have a preexisting trademark like Kodak or like Xerox or like a Teflon in the old days. And someone goes along. Yes. Trademark. Thank you. The case is submitted.